## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

HARBOR BREEZE AMI, LLC;
JAMES DANIEL CLARK; and
JUSTIN DANIEL CLARK,

     *Plaintiffs*,

     v.                                     Case No. 8:22-cv-1682

CITY OF HOLMES BEACH, FLORIDA;
and WILLIAM L. TOKAJER, Chief of Police
for the City of Holmes Beach, in his official
capacity,

     *Defendants*,

_____/

## MOTION FOR SUMMARY JUDGMENT
*(Declaratory and permanent injunctive relief requested)*

Subsection 30-55(2)(a) of the City of Holmes Beach noise ordinance is void for vagueness. Critically, it includes an open-ended list of subjective "background standards" to determine whether a violation has occurred. And City police officers are trained to enforce these standards without reference to objective criteria.

What's more, even though the noise ordinance includes a separate test based on objective decibel levels, it is the City police department's policy to send officers out to noise complaints and have the officers not take a decibel reading. Officers therefore used the subjective "background standards" to

charge Plaintiff Justin Clark with a violation of the ordinance on a Saturday afternoon. Accordingly, Plaintiffs ask this Court to grant summary judgment in their favor, declare that subsection 30-55(2)(a) is unconstitutional, and enjoin Defendants from enforcing subsection 30-55(2)(a).

## STATEMENT OF UNDISPUTED FACTS

On November 27, 2021—the Saturday after Thanksgiving—Plaintiff Justin Clark was cited for violating the City of Holmes Beach noise ordinance. Ex. A, Citation. The citation states that the violation occurred at 3 p.m. at the address 240 S. Harbor Dr.[1] *Id.* Harbor Breeze AMI, LLC owns the property, and Justin's father—James Daniel Clark ("Dan Clark")—has an ownership interest in Harbor Breeze and is ultimately responsible for payment of any citations. Ex. B, Declaration, ¶¶ 2–3, 7.

Justin Clark challenged his citation, and a code compliance hearing was held on February 10, 2022. Ex. C, Transcript. William Tokajer, the Chief of Police for the City of Holmes Beach, testified at the hearing. *Id.* at 19–21. He said that police have been called out to the property for noise violations twelve times since 2019. *Id.* at 19:8–19. In past visits to the property (before November 27, 2021), police used a sound-level meter to determine whether a violation

---

[1] The citation mistakenly refers to 240 S. Harbor Ln, but that address does not exist. The actual address is 240 S. Harbor Dr. *See* Ex. C at 22:15–17.

occurred, and no citations were ever issued for any violation at the property using that objective test. Ex. B ¶ 5.

Indeed, the City's noise ordinance includes an objective standard based on decibel levels. *See* City of Holmes Beach, Fla., Code ("HBC") § 30-55(2)(b); *see also* Ex. D, Ordinance. At the hearing, however, Chief Tokajer testified that it is "policy within the Homes Beach Police Department to send officers out to noise complaints and have the officers not take a decibel reading." Ex. C at 20:12–15. He explained that officers could instead use "seven standards." *Id.* at 20:16–21.

When asked how officers are "trained to evaluate those seven standards," Chief Tokajer answered: "With common sense." *Id.* at 20:22–24. In other words, he seemed to endorse an *I-know-it-when-I-see-it* approach:

> This one is clearly a violation. You can hear it on the video. It's loud. It's something that would be something that would bother the neighbors. And if you lived next door to it, that's not something you would want to hear, that loud party coming into your house from the neighbors every weekend.

*Id.* at 20:24–21:4.

A special magistrate ultimately ruled that Justin Clark violated subsection 30-55(2)(a) of the City's noise ordinance. Ex. E, Final order, at 1. This subsection comprises the "seven standards" referenced in Chief Tokajer's testimony. *See* HBC § 30-55(2)(a).

3

## LEGAL STANDARD

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When considering a motion for summary judgment, courts must construe the facts and draw all inferences in the light most favorable to the nonmoving party." *Gundy v. City of Jacksonville*, 50 F.4th 60, 70 (11th Cir. 2022) (cleaned up).

## ARGUMENT

This Court should grant summary judgment because subsection 30-55(2)(a) of the City's noise ordinance is unconstitutionally vague as a matter of law. Below, Plaintiffs explain (I) that only subsection 30-55(2)(a) of the City's noise ordinance is at issue, (II) why subsection 30-55(2)(a) is unconstitutionally vague, and (III) why the counter-arguments raised in Defendants' motion to dismiss are unavailing.

## I.     Only subsection 30-55(2)(a) is at issue.

The City's noise ordinance makes it "unlawful for any person to make or continue, or cause or permit to be made or continued, any noise disturbance." HBC § 30-55(1). A "noise disturbance" is generally defined as "[a]ny noise or vibration" that (a) "[d]isturbs, annoys or is harmful or injurious to the health or welfare of a reasonable person of ordinary sensibilities"; or (b) "[e]xceeds the maximum allowable limits set forth in [the ordinance]." *Id.* § 30-53(11).

4

Notwithstanding the general definition of a noise disturbance, subsection 30-55(2) tells enforcement officers *how* they should determine whether a noise disturbance has occurred. Specifically, it allows officers to use two different methods—described in subsections 30-55(2)(a) and 30-55(2)(b)—or "a combination of both." *Id.* § 30-55(2). The "[r]equirements in any one of said subsections stand alone." *Id.*

Subsection 30-55(2)(b) allows enforcement officers to use decibel limits to determine whether a noise disturbance has occurred. Plaintiffs do not challenge this objective standard.

Subsection 30-55(2)(a), on the other hand, is a subjective standard, and it is the portion of the ordinance that Plaintiffs challenge. Specifically, it allows officers to determine that a noise disturbance has occurred by reference to a list of "[b]ackground standards." HBC § 30-55(2)(a). The list is expressly open-ended, and it does not tell officers how few (if any) standards they must consider. *Id.* Nor does subsection 30-55(2)(a) prohibit officers from considering completely arbitrary standards of their own choosing. *Id.* Instead, it simply provides that the standards to be considered "*may* include but *shall not be limited to* the following":

1. The volume of the noise.
2. The intensity of the noise.
3. Whether the nature of the noise is usual or unusual.
4. The volume and intensity of the ambient noise, if any.
5. The proximity of the noise to residential sleeping facilities.

5

6. The time of the day or night the noise occurs.

7. The duration of the noise.

*Id.* (emphasis added).

## II.    Subsection 30-55(2)(a) is unconstitutionally vague.

Subsection 30-55(2)(a) is vague for two reasons: (A) because it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits, and (B) because it authorizes or even encourages arbitrary and discriminatory enforcement. *Cf., e.g., Hill v. Colorado*, 530 U.S. 703, 732 (2000) ("A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement.").

### A.    Subsection 30-55(2)(a) fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits.

"Vague laws may trap the innocent by not providing fair warning." *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972). The Supreme Court therefore insists that "laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Id.*

The plain language of subsection 30-55(2)(a) fails to provide an ordinary person a reasonable opportunity to understand what conduct it prohibits. For

instance, subsection 30-55(2)(a) states that an enforcement officer "may" consider an open-ended list of factors to determine whether a noise disturbance has occurred. The word "may" is permissive—not mandatory. *E.g.*, *The Fla. Bar v. Trazenfeld*, 833 So. 2d 734, 738 (Fla. 2002). Accordingly, subsection 30-55(2)(a) does not *require* an enforcement officer to do anything; it is entirely up to the officer to decide how he should determine whether a noise disturbance has occurred.

Subsection 30-55(2)(a) also provides that the standards that may be considered "include but shall not be limited to" those listed. There is no restriction on which *other* standards may be considered. HBC § 30-55(2)(a). This plainly means that enforcement officers may consider any standard of their choosing, including arbitrary standards such as whether the suspect is wearing a green shirt or has pink hair. *See, e.g.*, *State v. Hobbs*, 974 So. 2d 1119, 1122 (holding that the phrase "not limited to" meant that a list was just "a list of some, but not all" factors that could be considered); *see also* Bryan A. Garner, *Garner's Dictionary of Legal Usage* 439–40 (3d ed. 2011) (explaining that the phrase "including but not limited to" is "intended to defeat three canons of construction: *expressio unius est exclusio alterius* ('to express one thing is to exclude the other'), *noscitur a sociis* ('it is known by its associates'), and *ejusdem generis* ('of the same class or nature')"). An ordinary person cannot be expected to guess which standards an enforcement officer may choose to

apply. *E.g.*, *Connally v. General Constr. Co.* 269 U.S. 385, 391 (1926) (holding that a law is unconstitutionally vague if "men of common intelligence must necessarily guess at its meaning and differ as to its application").

The listed standards are also vague. For example, the first, second, and fourth standards ask about the "volume" and "intensity" of noise. HBC § 30-55(2)(a)(1), (2), (4). But section 30-55(2) states that "[no] type of noise measurement [is] necessary to prove a violation." If an enforcement officer uses his or her ears to determine volume or intensity, the officer is in fact assessing loudness, which is inherently subjective. *See* Brad Pack, *What is Loudness?*, Sonarworks (June 5, 2019), https://www.sonarworks.com/blog/learn/what-is-loudness ("Volume is a scientific measurement of the quantity or power of a sound. Loudness, on the other hand, is much more difficult to quantify as it is completely subjective and based entirely on your personal perception of sound."); *see also* World Soundscape Project, *Handbook for Acoustic Ecology* (2d. ed. 1999), https://www.sfu.ca/sonic-studio-webdav/handbook/Loudness.html (last visited Nov. 14, 22) (defining "loudness" as "[t]he subjective impression of the intensity or magnitude of a sound").

Similarly, the third standard asks if the "nature" of the noise is "usual" or "unusual." *Id.* § 30-55(2)(a)(3). The term "nature" is ambiguous as applied to noise. After all, "nature" means "the inherent character or basic constitution . . . of a person or thing." *Nature*, Merriam-Webster, https://www.merriam-

webster.com/dictionary/nature. And an ordinary person would not know when the inherent character of a noise creates a noise disturbance. Further, whether the nature of a noise is "usual" or "unusual" depends on the listener's prior experience—in other words, it is subjective. *Baker Cnty. Med. Servs. v. Aetna Health Mgmt.*, 31 So. 3d 842, 845 (Fla. 1st DCA 2010) ("'Usual' is defined as 'ordinary; customary' and 'expected based on previous experience.'" (alterations adopted) (citation omitted)); *Nichols v. City of Gulfport*, 589 So. 2d 1280, 1284 (Miss. 1991) ("If beauty is in the eye of the beholder, whether a noise is . . . 'unusual' . . . certainly depends upon the ear of the listener."); *Pritikin v. Thurman*, 311 F. Supp. 1400, 1402 (S.D. Fla. 1970) (ruling that the phrase "unusual noise" was insufficiently narrow).

The remaining standards are vague because they do not have benchmarks. For instance, enforcement officers are allowed to consider the "proximity of the noise to residential sleeping facilities," but the ordinance does not say *how proximate* noise may be—whether one foot, a thousand feet, or more. HBC § 30-55(2)(a)(5). The ordinance also allows officers to consider the "time of the day or night the noise occurs," but it does not specify *which times* of day or night noise is appropriate. *Id.* § 30-55(2)(a)(6). Finally, officers may consider the "duration of the noise," but the ordinance does not specify *what duration* is appropriate. *Id.* § 30-55(2)(a)(7). As a result, it is up to each officer to apply his own subjective opinions regarding these standards.

9

Courts have ruled that similar laws are unconstitutionally vague. For example, in *McClellan v. City of Alexandria*, 363 F. Supp. 3d 665, 671–72 (E.D. Va. 2019), the court confronted a noise ordinance that included a "nonexhaustive" list of standards nearly identical to the standards in subsection 30-55(2)(a). Although one provision in the ordinance had an objective decibel limit, the court explained it still had to consider the ordinance's other provisions. *Id.* at 678–79. Because those other "provisions employ[ed] vague, standardless language," the court denied the motion to dismiss. *Id.* at 680.

Another case on point is *People v. New York Trap Rock Corp.*, 442 N.E.2d 1222 (N.Y. 1982). Again, the ordinance in *New York Trap Rock* included a nonexhaustive list of standards nearly identical to the standards in subsection 30-55(2)(a). *Id.* at 1224. The court held that "none" of the standards "provide[d] a guideline for the perplexed would-be noisemaker." *Id.* at 1227. Further, the court questioned "[f]rom whose point of view are the 'intensity', 'proximity', 'duration', 'time' and other subjective concepts . . . to be judged?" *Id.* The court also indicated that a defendant would not know whether noise is appropriately "usual or unusual." *See id.* Thus, the court declared that the ordinance was unconstitutionally vague. *Id.*

Other cases reach similar conclusions. *E.g.*, *Dae Woo Kim v. City of New York*, 774 F. Supp. 164, 170 (S.D.N.Y. 1991) (noise ordinance was vague

because it used a "subjective standard" such that the conduct barred would "vary with the listener"); *Dupres v. City of Newport*, 978 F. Supp. 429, 434 (D.R.I. 1997) (noise ordinance was vague because "the legality of a person's conduct [wa]s judged solely by the subjective characteristics assigned to it by anyone exposed to it"); *Fratiello v. Mancuso*, 653 F. Supp. 775, 790 (D.R.I. 1987) (noise ordinance was vague because "attempts to comply with or to enforce the ordinance require[d] application of a completely subjective standard"); *Tanner v. City of Virginia Beach*, 674 S.E.2d 848, 853 (Va. 2009) (noise ordinance was vague because it depended on the "subjective tolerances, perceptions, and sensibilities of the listener"); *Thelen v. State*, 526 S.E.2d 60, 62 (Ga. 2000) (noise ordinance was vague because it "depend[ed] upon the ear of the listener" (citation omitted)); *U.S. Lab. Party v. Pomerleau*, 557 F.2d 410, 412 (4th Cir. 1977) (noise ordinance was vague because "a violation depend[ed] on the subjective opinion of the investigator"); *U.S. Lab. Party v. Rochford*, 416 F. Supp. 204, 207 (N.D. Ill. 1975) (noise ordinance was vague because it used a "subjective standard"); *see also St. Mark Roman Cath. Par. Phoenix v. City of Phoenix*, No. CV 09-1830, 2010 WL 11519169, at *8 (D. Ariz. Mar. 3, 2010) (vagueness challenge survived motion to dismiss where plaintiffs alleged that the ordinance contained "no objective standards for enforcement").

As these cases demonstrate, noise ordinances that use subjective standards are unconstitutionally vague. Here, too, because subsection 30-55(2)(a) uses subjective standards, it is unconstitutionally vague.

**B.    Subsection 30-55(2)(a) authorizes or even encourages arbitrary and discriminatory enforcement.**

Vague laws "impermissibly delegate[] basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned*, 408 U.S. at 108–09. For the same reasons argued *supra* § II.A, at 6–12, subsection 30-55(2)(a) authorizes or even encourages arbitrary and discriminatory enforcement because it uses subjective standards. *E.g.*, *id.* at 108 ("[I]f arbitrary and discriminatory enforcement is to be prevented, laws must provide *explicit standards* for those who apply them." (emphasis added)). *Dae Woo Kim*, 774 F. Supp. at 170 (ruling that the ordinance's "broad terms and lack of objective standards invite[d] arbitrary and discriminatory enforcement"); *Luna v. City of Ulysses*, 17. P.3d 940, 943 (Kan. Ct. App. 2000) (ruling that the "absence of an objective standard" risked "arbitrary and discriminatory enforcement").

Not only does the plain language of subsection 30-55(2)(a) authorize or even encourage arbitrary and discriminatory enforcement, but it has also been unevenly applied. *Cf. Phillips v. Borough of Folcroft*, 305 F. Supp. 766, 769

(E.D. Pa. 1969) (noting that evidence of "uneven application of the ordinance" illustrated "the potential for the arbitrary exercise of the police power which is latent in the ordinance" and was "therefore of some assistance in deciding the issue of vagueness").

For example, before November 27, 2021, enforcement officers used a sound-level meter to determine whether a violation occurred at Plaintiffs' property. Ex. B ¶ 5. Plaintiffs have never been cited for any violation using that objective test. *Id.* Yet, on November 27, 2021, officers did not use a sound-level meter and instead applied the background standards of subsection 30-55(2)(a). *See id.* ¶ 6; Doc. 1 ¶¶ 24–26;

Even worse, it is now the City police department's policy for officers *not* to take decibel measurements. Ex. C at 20:12–15. This policy increases the potential for arbitrary enforcement. *Cf. City of Philadelphia v. Cohen*, 479 A.2d 32, 37 (Pa. Commw. Ct. 1984) ("Substitution of precise decibel measurement by sound intensity meters for general, descriptive definitions of 'noise' reduces the likelihood of arbitrary enforcement and renders a regulation less . . . vulnerable to challenge on vagueness grounds.").

## III.    Defendants' arguments are unavailing.

In their motion to dismiss, Defendants rely on *Kovacs v. Cooper*, 336 U.S. 77 (1949). Doc. 8 at 10. There, a plurality[2] of the Supreme Court concluded that—in the context of an ordinance regulating sound trucks—the phrase "loud and raucous" was not vague. *Kovacs*, 336 U.S. at 79. The ordinance read as follows:

> [I]t shall be unlawful for any person . . . to play, use or operate for advertising purposes, or for any other purpose whatsoever, on or upon the public streets, alleys or thoroughfares in the City of Trenton, any device known as a sound truck, loud speaker or sound amplifier, or radio or phonograph with a loud speaker or sound amplifier, or any other instrument known as a calliope or any instrument of any kind or character which emits therefrom loud and raucous noises and is attached to and upon any vehicle operated or standing upon said streets or public places aforementioned.

*Id.* at 78.

*Kovacs* is distinguishable for two reasons. First, the ordinance in *Kovacs* is markedly different from subsection 30-55(2)(a). Whereas the ordinance in *Kovacs* prohibited emission of "loud _and_ raucous" noises, subsection 30-55(2)(a) permits an enforcement officer to find a violation based on any _one_ of the listed factors (or none at all). *Cf. Phillips*, 305 F. Supp. at 770 (distinguishing *Kovacs*

---

[2] "Although the exact nature of the original holding in *Kovacs* is obscured by several conflicting opinions, . . . any doubts about the meaning of *Kovacs* have been dispelled by its frequent citation as precedent." *Reeves v. McConn*, 631 F.2d 377, 382, 386 n.11 (5th Cir. 1980).

and noting that, unlike in *Kovacs*, the words at issue in *Phillips* were "used in the disjunctive" such that a person could be "convicted of disorderly conduct for making only 'loud noises'").

Second, the ordinance in *Kovacs* was limited to a specific context: sound trucks in public streets. *See* 336 U.S. at 78. By contrast, the City's noise ordinance broadly operates in any context within the city at any time and on any day, including a Saturday afternoon. *See* HBC § 30-55(1). The lack of a limiting context makes subsection 30-55(2)(a) more problematic than the ordinance in *Kovacs*. *E.g.*, *Dupres*, 978 F. Supp. at 434 ("The flaws inherent in the ordinance are magnified by the fact that the ordinance does not define a specific context in which it is intended to apply. Indeed, the vagueness of a statute's terms can often be dispelled by language reciting the statute's purpose and specifically defining the setting in which it applies."); *Thelen*, 526 S.E.2d. at 62 ("[The ordinance] does not define a specific context in which it applies, thereby magnifying its inherent flaws."); *see also Pine v. City of West Palm Beach*, 762 F.3d 1262, 1275 (11th Cir. 2014) (emphasizing that an ordinance prohibited "only shouting and loud, raucous, or unreasonably disturbing amplified noise *near health care facilities or institutions for the sick*" (emphasis added)).

Defendants next rely on *DA Mortgage, Inc. v. City of Miami Beach*, 486 F.3d 1254 (11th Cir. 2007). Doc. 8 at 10–11. But there, too, the ordinance was

limited by a specific context. Namely, the ordinance prohibited the reproduction of sound in such a manner "as to disturb the peace, quiet and comfort *of the neighboring inhabitants*." *DA Mortgage*, 486 F.3d at 1271 (emphasis added). The ordinance also made it unlawful to play a device "'with louder volume than is necessary for convenient hearing' *for those voluntary listeners in the 'room, vehicle, or chamber' where the device is being operated*." *Id.* (emphasis added). Again, subsection 30-55(2)(a) has no such limiting context.

Defendants also cite *Summers v. City of Daytona Beach*, No. 6:12-cv-926, 2013 WL 360376 (M.D. Fla. Jan. 30, 2013). Doc. 8 at 12. But the plaintiff there challenged only the portion of an ordinance that prohibited noise that "disturbs the enjoyment of life or property by persons of reasonable sensitivity within the area of audibility." *Summers*, 2013 WL 360376 at *4. Here, Plaintiffs are not challenging similar language. *Compare id.*, *with* HBC § 30-55(2)(a).

Defendants' other cases are equally distinguishable. Doc. 8 at 13–15. None of them involved language similar to the language in subsection 30-55(2)(a). *See Faith Baptist Church v. Waterford Township*, No. 08-11028, 2014 WL 256285, at *5 (E.D. Mich. Jan. 23, 2014); *Abrami v. Town of Amherst*, No. 09-30176, 2013 WL 3777070, at *14 (D. Mass. July 26, 2013); *Munn v. City of Ocean Springs*, No. 1:12CV97, 2013 WL 2406555, at *2 (S.D. Miss. May. 31, 2013); *Thomas v. Coopersmith*, No. 11-7578, 2012 WL 3599415, at *2 (E.D. Pa.

Aug. 21, 2012); *Sharkey's, Inc. v. City of Waukesha*, 265 F. Supp. 2d 984, 992 (E.D. Wisc. 2003).

It is no answer to argue, as Defendants do, that subsection 30-55(2)(a) is "bound[] by the reasonable person standard." Doc. 8 at 16. Of course, the ordinance generally defines "noise disturbance" using a reasonable-person standard. HBC § 30-53(11). But that definition is irrelevant because subsection 30-55(2) tells an enforcement officer *how* to "determine[] whether a violation . . . has occurred." Accordingly, regardless of how "noise disturbance" is generally defined, officers must look to subsection 30-55(2) to determine that a noise disturbance has occurred. And, unlike the general definition of "noise disturbance," subsection 30-55(2)(a) makes no mention of a reasonable-person standard.

Even if subsection 30-55(2)(a) were bound by a reasonable-person standard, it would still be unconstitutionally vague. As the court held in *Tanner v. City of Virginia Beach*, 674 S.E.2d 848, 853 (Va. 2009), "references in the ordinance to 'reasonable persons,' and to persons of 'reasonable sensitivity,' do not provide a degree of definiteness sufficient to save the ordinance from the present vagueness challenge." After all, those phrases simply "delegate to a police officer the subjective determination whether persons whom the police officer considers to be of reasonable sensitivity would find the noise detrimental to their life or health." *Id.* "Police officers likely will

17

have differing perceptions regarding what levels of sound exceed the described tolerance levels and sensitivities of reasonable persons." *Id.* at 441.

Like the court in *Tanner*, other courts have found laws to be vague even though they incorporated an element of reasonableness. *United States v. L. Cohen Grocery Co.*, 255 U.S. 81, 89 (1921) (holding that a law that prohibited charging any "unjust or unreasonable" rate was vague); *Langford v. City of Omaha*, 755 F. Supp. 1460, 1463 (D. Neb. 1989) ("The term 'unreasonable,' is not a well-defined term, and is capable of many different interpretations as to its meaning. The fact that the term is likely to be interpreted differently among the various officials enforcing the ordinance is especially troublesome."); *Dupres*, 978 F. Supp. at 433–34 (ruling that a noise ordinance that prohibited "unreasonably" loud, disturbing or unnecessary was vague); *State v. Compher*, No. 1174-1175, 1985 WL 17456, at *3 (Ohio Ct. App. 1985) ("[T]he language 'making unreasonable noise' . . . fails to give a person of ordinary intelligence fair notice that his contemplated conduct would violate the statute and encourages ad hoc and discriminatory enforcement."); *St. Mark*, 2010 WL 11519169, at *2 (denying a motion to dismiss a vagueness challenge to a noise ordinance that prohibited "unreasonably loud, disturbing and unnecessary noise").

To be sure, a judge in this district, Judge Dalton, has declined to follow *Tanner* because of "binding precedent such as *Reeves* and *DA Mortgage*

approving the use of the reasonable person standard in noise ordinances." *Summers*, 2013 WL 360376 at *5. Judge Dalton's decision is not binding precedent on this Court. *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011). More importantly, as noted *supra* at 15–16, *DA Mortgage* is distinguishable because the ordinance was limited by a specific context. *Reeves* is distinguishable for the same reason: it was limited to the specific context of using sound-amplifying equipment on outdoor public property and the effects of such noise on "persons *within the area of audibility*." *See* 631 F.2d at 380 n.1, 385–86 (emphasis added).

In any event, the court in *Reeves* explained that "[i]f actual experience with the ordinance were to demonstrate that it represents a subjective standard," the court "would not hesitate to change [its] judgment accordingly." *Id.* at 386. Here, actual experience indicates that instead of using objective criteria like sound meters, City police officers are trained to use "common sense." Ex. C at 20:22–24. What's more, Defendants used the subjective standards of subsection 30-55(2)(a) to charge Plaintiff Justin Clark with a violation of the ordinance at 2:55 p.m. on a Saturday. Ex. A; Ex. B ¶ 6; Doc. 1 ¶¶ 24–26

A standard based on the officer's "common sense" is subjective. *See Clary v. City of Cape Girardeau*, 165 F. Supp. 3d 808, 814 (E.D. Mo. 2016). Indeed, in *Clary* the defendant city had "an unwritten policy that its police officers have

'discretion to decide' based on their '*common sense*' whether a person's yelling, shouting, hooting, whistling, or singing" was violative of the city's noise ordinance. *Id.* (emphasis added). Faced with that policy, the court explained that "[v]esting law enforcement officials with complete discretion to decide whether a violation has occurred is the hallmark of a vague regulation." *Id.* at 822. The court therefore held that "the Constitution does not permit the arbitrary criminalization of conduct that the defendants' 'common sense' standard sanctions." *Id.* Here, too, the City's "common sense" policy renders the ordinance unconstitutionally vague.

Even if subsection 30-55(2)(a) were bound by a reasonable-person standard, it would still be unconstitutional because the ordinance does not require officers to first give warnings. *See Eanes v. State*, 569 A.2d 604, 617 (Md. 1990). In *Eanes*, the court held that a noise ordinance was not unconstitutionally vague. *Id.* Nevertheless, the court noted that "a speaker exercising the legitimate rights of free speech may be unaware that his or her volume has reached a prohibitive level and has become unlawfully disruptive." *Id.* The court therefore held that the application of the ordinance "ordinarily requires prior warning by police authority, so that the speaker is made aware that further communication at the offensive volume level may subject the individual to prosecution." *Id.* Here, too, prior warnings must be given for violations under subsection 30-55(2)(a).

20

Defendants accuse Plaintiffs of urging this Court "to require the City to use objective mathematical means to enforce its code." Doc. 8 at 17–18. Plaintiffs urge no such thing. The City's ordinance has a "plainly audible" standard, which does not use any mathematical means. *See* HBC § 30-55(2)(c)(2); *see also id*. § 30-53(14) (defining "plainly audible"). Plaintiffs do not challenge the plainly-audible standard. Notably, however, the City's plainly-audible standard applies only "[a]fter 10:00 p.m. and before 7:00 a.m. the following day." *See id*. § 30-55(2)(c)(2). It does not apply at other times.

Finally, it bears noting that, although some courts have concluded that using sound-level meters is not constitutionally required, the technology in this area has drastically evolved. *See generally*, Brüel & Kjær, *Historical Milestones of a Sound Level Meter*, https://www.bksv.com/en/knowledge/blog/sound/sound-level-meter-history (last visited Nov. 14, 22). Sound-level meters that meet the ANSI S1.4-1983 standard—the same standard used in the ordinance, *see* HBC § 30-53(3)—can be purchased for less than $500. *E.g.*, Grainger, *Sound Level Meter and Calibrator Kit*, https://www.grainger.com/product/161D41 (last visited Nov. 14, 22). And modern cell phones can use digital applications to serve as sound-level meters. *See* Clarke Roberts, *Sound Level Meter Apps – How Accurate Are They?*, NoiseNews (Oct. 4, 2021), https://www.cirrusresearch.co. uk/blog/2021/10/sound-level-meter-apps-accuracy/ ("There are plenty of apps that, when used with the appropriate microphone, can be an

effective and accurate way to take measurements."). Whereas it might have been unreasonable to require police officers to use sound-level meters in the past, it is no longer unreasonable in light of today's technology.

## CONCLUSION

Plaintiffs ask this Court to grant summary judgment in their favor, declare that subsection 30-55(2)(a) is unconstitutional, enjoin Defendants from enforcing subsection 30-55(2)(a), and reserve jurisdiction to award to Plaintiffs their attorney's fees, expert fees, and costs as allowed under 42 U.S.C. § 1988(b)–(c), 28 U.S.C. § 1920, and any other applicable law.

**CREED & GOWDY, P.A.**

*/s/ Bryan S. Gowdy*
**Bryan S. Gowdy** (*Lead counsel*)
Florida Bar No. 176631
bgowdy@appellate-firm.com
filings@appellate-firm.com
**Dimitrios A. Peteves**
Florida Bar No. 123903
dpeteves@appellate-firm.com
865 May Street
Jacksonville, Florida 32204
Telephone: (904) 350-0075
Facsimile: (904) 503-0441
*Counsel for Plaintiffs*