**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**HARBOR BREEZE AMI, LLC,
DAN CLARK, and
JUSTIN CLARK,**

        **Plaintiffs,**

v.                                 **Case No. 8:22-cv-1682-AAS**

**CITY OF HOLMES BEACH, FLORIDA;
and WILLIAM L. TOKAJER, Chief of Police
for the City of Holmes Beach, in his official
capacity,**

        **Defendants.**
_____/

## ORDER

    Plaintiffs Harbor Breeze AMI, LLC (Harbor Breeze), James Daniel Clark (Dan Clark), and Justin Daniel Clark (Justin Clark) (collectively, the plaintiffs) move for summary judgment. (Doc. 15). Defendants City of Holmes Beach, Florida and Holmes Beach Chief of Police William L. Tokajer (collectively, the defendants) respond in opposition and cross-move for summary judgment in their favor. (Doc. 25). The plaintiffs and defendants each reply. (Docs. 26, 28).

## I.   LEGAL STANDARD

    An order granting summary judgment is appropriate if no genuine dispute of material fact exists and the moving party is entitled to judgment

1

as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the suit under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

## II.    BACKGROUND

### A.    Statement of Undisputed Facts[1]

This action concerns the use of a residential home (the Property) located at 240 South Harbor Drive, Holmes Beach, Florida. (Doc. 15, Ex. 2, ¶¶2–3). The Property is owned by Harbor Breeze. The sole member of Harbor Breeze is Tobias Investment, LLC. (Doc. 24, p. 2). Skybird Irrevocable Trust (Skybird), in turn, is the sole member of Tobias Investment, LLC. (*Id.*). Both Plaintiff Dan Clark and Plaintiff Justin Clark (Dan Clark's son) own interests in Skybird, and thus, the Property as well. (*Id.*).

On Saturday, November 27, 2021, around 3:00 P.M., Holmes Beach Police Officer Michael Van Horn visited the Property in response to a neighbor's complaint of excessive noise. (Doc. 15, Ex. 3, p. 6:2–6). Officer Van Horn parked approximately 200 feet south of the residence to "make sure [he] was giving [the occupants of the Property] . . . the benefit of the doubt." (*Id.* at 6:5–7; 7:20–23; 13:19–24). Officer Van Horn testified the music emanating

---

[1] "The parties do not dispute the material facts" in this action. (Doc. 25, p. 2). Because the defendants' cross-motion for summary judgment mainly cites to the plaintiffs' description of the material facts underlying this action, this court also utilizes the description of facts in the plaintiffs' motion for summary judgment (Doc. 15) and attached affidavits.

from the Property, specifically the bass, was "instantly discernible" as coming from the Property. (*Id.* at 6:8–12, 8:5–7, 13:10–12).

Upon reaching the Property, Officer Van Horn witnessed seven people in a hot tub, including Justin Clark. (*Id.* at 6:12–20). Officer Van Horn confronted Justin Clark about the excessive noise and issued a citation to Justin Clark for producing excessive noise in violation of Holmes Beach County Ordinance § 30-55 (the Ordinance). (*Id.* at 6:21–25; Doc. 15, Ex. 1).

Justin Clark challenged the citation at a February 10, 2022 code compliance hearing. (Doc. 15, Ex. 3). On February 11, 2022, Special Magistrate Judge Michael A. Connolly concluded Holmes Beach had "proven by competent substantial evidence that [Justin Clark] violated [the] Ordinance." (Doc. 15, Ex. 5, p. 2). On July 26, 2022, the plaintiffs initiated this facial challenge against Chief Tokajer in his official capacity and Holmes Beach under 42 U.S.C. § 1983, alleging Subsection 30-55(2)(a) of the Ordinance is unduly vague such that the enforcement of that subsection violates the due process clause of the Fourteenth Amendment to the United States Constitution. (Doc. 1).

**B. The Ordinance**

The Ordinance consists of Sections §§ 30-51 through 30-59 of the Holmes Beach Code of Ordinances. Section 30-52 declares the public policy purpose undergirding Holmes Beach's enactment of the Ordinance is to

3

"reduce the ambiance noise level in the city, to preserve, protect, and promote public health, safety, and welfare and the peace and quiet of the inhabitants of the city."

Section 30-53 includes definitions of specific terms used in the Ordinance. In relevant part, Subsection 30-53(11) defines a "noise disturbance" as "[a]ny noise or vibration which . . . [d]isturbs, annoys, or is harmful or injurious to the health or welfare of a reasonable person of ordinary sensibilities, or . . . exceeds the maximum allowable limits set forth in this article." Section 30-54 provides a list of time-place-and-manner exceptions to the Ordinance's prohibitions.

Section 30-55 sets out the actual noise disturbance prohibitions in the ordinance. Subsection 30-55(1) states "it shall be unlawful for any person to make or continue, or cause or permit to be made or continued, any noise disturbance." Subsection 30-55(2) is titled "Determination and measurement of noise disturbance" and states "[a]n enforcement officer determines whether a violation of this chapter has occurred by using the standards described in subsection a. or subsection b., or a combination of both methods," though "[r]equirements in any one of said subsections stand alone."

Subsection 30-55(2)(a) lists seven "background standards" used to determine if a noise constitutes a noise disturbance under Subsection 30-53(11). These background standards may include but are not limited to the

4

following:

1. The volume of the noise.
2. The intensity of the noise.
3. Whether the nature of the noise is usual or unusual.
4. The volume and intensity of the ambient noise, if any.
5. The proximity of the noise to residential sleeping facilities.
6. The time of the day or night the noise occurs.
7. The duration of the noise.

Holmes Beach Code (HBC) § 30-55(2)(a). Subsection 30-55(2)(b) delineates an objective decibel measure to determine whether a noise constitutes a noise disturbance, where (in relevant part) "[a] sound must not exceed: 1. Sixty-five dBA during the hours between 7:00 a.m. and 10:00 p.m.; 2. Fifty dBA during the hours between 10:00 p.m. and 7:00 a.m." The remainder of the Ordinance (Sections 30-56 through 30-59) discusses enforcement, penalties, and proceedings upon violating the Ordinance.

## III.   ANALYSIS

### A. Dismissal of Chief Tokajer with Prejudice

Before considering the merits of the plaintiffs' claim, the court notes the parties agreed to dismiss Chief Tokajer as a party to this action. (Doc. 25, p. 10; Doc. 26, p. 2). This dismissal is appropriate because, as the plaintiffs acknowledge, "when an officer is sued under Section 1983 in his or her official capacity, the suit is simply another way of pleading an action against an entity of which an officer is an agent." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (internal citations omitted). "[S]uits against a municipal

5

officer sued in his official capacity and direct suits against municipalities are functionally equivalent" and thus duplicative. *Id*.

However, the plaintiffs agree to dismiss Chief Tokajer "provided that the City agrees it is not entitled to Eleventh Amendment immunity and that it is the properly named defendant." (Doc. 26, p. 2). The defendants concur that such a claim of immunity would be "without legal merit" because the Eleventh Amendment does not bar federal claims against counties and municipal corporations. (Doc. 28, p. 2). *See Abusaid v. Hillsborough Cnty. Bd. of Cnty. Comm'rs*, 405 F.3d 1298, 1301 (11th Cir. 2005). The court thus dismisses with prejudice Chief Tokajer.

### B. Plaintiffs' Standing

Holmes Beach challenges the plaintiffs' capacity to bring their due process claim. (Doc. 25, pp. 11–18). Because lack of standing deprives the court of its constitutional power to adjudicate the parties' dispute, a district court must confirm a party's standing before proceeding to consider the merits of the claims. *Gardner v. Mutz*, 962 F.3d 1329, 1336 (11th Cir. 2020) (citations omitted).

Establishing standing requires three elements: an injury-in-fact (an invasion of an interest that is both concrete and particularized, and actual or imminent), a causal connection between the plaintiff's injury and the challenged action of the defendant, and a likelihood (not mere speculation)

6

that a favorable judgment will redress the plaintiff's injury. *Gardner, supra*, at 1338 (*quoting Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 2136 (1992)). If a plaintiff lacks standing, the dispute is not within the subject matter jurisdiction of the court. *Doe v. Pryor*, 344 F.3d 1282, 1284 (11th Cir. 2003).

Beginning with the first element of standing, injury-in-fact is an injury that is both "concrete and particularized" as well as "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560, 112 S. Ct. at 2136 (internal citations omitted). Often an injury-in-fact arises from an action accruing before the start of litigation. However, the "credible threat of enforcement" of a law can create an injury imminent enough to establish Article III standing. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161, 134 S. Ct. 2334, 2343 (2014).

In *Driehaus*, for example, the Supreme Court found a "substantial" threat of enforcement by the Ohio Election Commission of an Ohio statute prohibiting the use of "false statements" during a political campaign. *Id*. The Court concluded (where the threat of enforcement is substantial) the plaintiff's "intention to engage in a course of conduct arguably affected with a constitutional interest" could constitute an injury where the "intended future conduct is arguably . . . proscribed by [the] statute they wish to challenge." *Id*. at 164–67, 2345–47.

Plaintiff Justin Clark clearly satisfies this understanding of injury. The cited conduct related to an outdoor get-together to watch a football game the Saturday after Thanksgiving. (Doc. 15, Ex. C, p. 23, l. 8–24; p. 24, 1–12). Though the plaintiffs raise a facial challenge in this action, the foundation of the plaintiffs' action stems from Justin Clark's citation for allegedly violating Subsection 30-55(2)(a) by hosting a party on private property he partially owns. *See generally* (Doc. 1).

The appeal of that violation is stayed pending the resolution of the plaintiffs' claim in this action. *See* (Doc. 25, p. 9). But the citation itself is nonetheless proof positive of a substantial threat of enforcement by Holmes Beach for conduct affected with a constitutional interest. *See Harrell v. The Florida Bar*, 608 F.3d 1241, 1254 (11th Cir. 2010) ("Under controlling case law, we apply the injury-in-fact requirement most loosely where First Amendment rights are involved, lest free speech be chilled even before the law or regulation is enforced.").

Holmes Beach responds with a prudential standing argument and contends the plaintiffs (Justin Clark in particular) do not have standing because this action arises from a clear violation of the Ordinance. *See* (Doc. 25, p. 15) ("Plaintiffs cannot reasonably challenge the facial validity of the ordinance at issue here, where their standing is premised wholly on the issuance of and their relationship to the underlying citation."). Holmes Beach

cites to Supreme Court precedent that "one who has received fair warning of the criminality of his own conduct from the statute in question is nonetheless entitled to attack it because the language would not give similar fair warning with respect to other conduct which might be within its broad and literal ambit." *Parker v. Levy*, 417 U.S. 733, 756, 94 S. Ct. 2547, 2562 (1974). *See also Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495, 102 S. Ct. 1186, 1191 (1982) ("[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.").

The underlying facts do not support the conclusion that Justin Clark's violation of the Ordinance was so obvious as to forfeit standing in this matter. Though the parties agreed during a hearing before a special magistrate that sound emanating from the party was "fairly loud," no objective sound measurement was conducted by Officer Van Horn at the scene. (Doc. 15, Ex. B, p. 36, l. 24–37, p. 37, l. 1–2; Ex. C, p. 20, l. 12–15). Body cam footage from the event presented at the hearing before the special magistrate only began recording audio as Officer Van Horn approached the residence. (Doc. 15, Ex. C, p. 8, l. 17–25). This means no non-testimonial evidence exists detailing the level of noise emanating from the Property at the time of the incident. Without a more objective calculation of what noise emanated from the Property on the afternoon of the incident, the court cannot conclude Justin

9

Clark clearly violated the Ordinance. Justin Clark has thus suffered an injury-in-fact sufficient to establishing

Dan Clark and Harbor Breeze also have standing. Holmes Beach argues, because "the subject ordinance has only been applied to one of the three plaintiffs, on a single occasion," Dan Clark and Harbor Breeze have not suffered an injury-in-fact because the threat of enforcement of the Ordinance as to Dan Clark and Harbor Breeze is "entirely speculative." (Doc. 28, pp. 3–4). The plaintiffs respond that the facts surrounding Justin Clark's citation are not determinative of the injuries suffered by the plaintiffs because the plaintiffs "are bringing a pre-enforcement challenge to prevent future enforcement of subsection 30-55(2)(a) of the City's ordinance." (Doc. 27, p. 3). Dan Clark alleges he has standing because he may be "subject to criminal and civil penalties for violating subsection 30-55(2)(a)" by virtue of his being within the law's jurisdiction. (Doc. 25, p. 3). Dan Clark also states his "ongoing and future conduct (including the intent to use the Property again on a Saturday afternoon)—and the credible threat that subsection 30-55(2)(a) will be enforced against them because of that conduct— . . . gives them standing." (Doc. 25, p. 5). Finally, Harbor Breeze and Dan Clark claim a cognizable injury because, should Justin Clark be found in violation of the noise ordinance, "the city may impose a lien on the property." (Doc. 25, p. 5 n. 1).

10

The complaint notes law enforcement officers have visited the Property twelve times over a three-year period, including four incidents in 2021 prior to the events of November 27, 2021 eventually leading to Justin Clark's citation. (Doc. 1, ¶¶ 16–24). Given Holmes Beach law enforcement's consistent presence at the Property for noise-related issues, the plaintiffs credibly allege a threat of future enforcement of the Ordinance. *See Laird v. Tatum*, 408 U.S. 1, 13–14, 92 S. Ct. 2318, 2325–26 (1972) ("Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm."). That threat of enforcement, coupled with potential financial liability from the placement of a lien on the Property under § 30-58(e) for failure to timely pay fines, constitutes an injury-in-fact to both Harbor Breeze and Dan Clark.

Concerning the other two pillars of standing, neither side's briefs addressed either element. Though Dan Clark notes police in past visits to the Property for alleged Ordinance violations have "used a sound-level meter to determine whether a violation occurred," Chief Tokajer stated department policy is to not take objective noise measurements when called out to investigate a potential noise disturbance. (Doc. 15, Ex. B, ¶ 5; Ex. C, p. 36, l. 24–37, p. 37, l. 1–2; Ex. C, p. 20, l. 12–15). The citation issued to Justin Clark in this matter lists Subsection 30-55(2)(a) as the charging implement under which Justin Clark was cited. (Doc. 15, Ex. A). Subsection 30-55(2)(a) in this

case is thus fairly traceable to the complained-of conduct. Further, redressability is also clear, as finding Subsection 30-55(2)(a) unconstitutional will necessarily negate the financial liability related to the citation as well as future harm from further noise disturbance investigations. The parties thus have standing to pursue relief in this action.

### C. Abstention

Though neither party raises abstention as an issue in this litigation, Justin Clark's action against Holmes Beach creates tension with the "longstanding public policy against federal court interference with state court proceedings." *Younger v. Harris*, 401 U.S. 37, 43, 91 S. Ct. 746, 751 (1971). In *Younger*, the Supreme Court constructed a jurisdictional doctrine that generally demands a court "abstain where a plaintiff's federal claims could be adjudicated in a pending state judicial proceeding." *Deakins v. Monaghan*, 484 U.S. 193, 202, 108 S. Ct. 523, 530 (1988). Abstention doctrines like *Younger* present a rare exception to the court's "virtually unflagging obligation" to exercise jurisdiction over the cases before them. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S. Ct. 1236, 1246 (1976).

Specific to *Younger* abstention, the Supreme Court has identified "three types of state proceedings where abstention is warranted: (1) 'criminal prosecutions'; (2) 'civil enforcement proceedings'; and (3) 'civil proceedings

12

involving certain orders that are uniquely in furtherance of the state courts' . . . judicial functions.'" *Leonard v. Ala. St. Brd. Of Pharmacy*, 61 F.4th 902, 907–08 (11th Cir. 2023) (*citing New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 367–68, 109 S. Ct. 2506, 2518 (1989)). Consideration of abstention is therefore necessary, as enforcement of the Ordinance constitutes a civil enforcement proceeding under *Younger*. *See Moore v. Cty. Of Asheville, N.C.*, 396 F.3d 385, 393 (4th Cir. 2005) (deeming the initiation of a "nuisance action" for violating a noise ordinance a "coercive civil proceeding to which the State was a party" and abstaining from exercising jurisdiction under *Younger*).

However, the court declines to abstain from exercising jurisdiction over this action because Holmes Beach appears to have effectively consented to defending this action in federal court. As previously noted, Justin Clark's appeal of his citation is currently stayed in state court pending the resolution of this case. *See* (Doc. 25, p. 9). A review of the state court docket shows Holmes Beach did not object to staying Justin Clark's appeal in state court. *Justin Danial Clark v. City of Holmes Beach*, Case No. 2022-AP-67, Doc. 13 (Fla. Manatee Cty. Ct. Aug. 2, 2022). Given Holmes Beach's choice not to object to staying Justin Clark's appeal pending the outcome of this action, and the fact that Holmes Beach has raised no argument on abstention, the court concludes Holmes Beach "submits to the jurisdiction of this Court in

order to obtain a more expeditious and final resolution of the merits of the constitutional issue." *Brown v. Hotel & Restaurant Employees & Bartenders Int'l Union*, 468 U.S. 491, 500 n. 9, 104 S. Ct. 3179, 3184 (1984).

### D. Facial Challenge that 30-55(2)(a) is Vague

The plaintiffs raise one facial constitutional claim against one subsection of the Ordinance. Specifically, the plaintiffs' complaint alleges "Section 30-55(2)(a) is void for vagueness" and requests the court "declare that section 30-55(2)(a) is unconstitutional" and "enjoin [the defendants] from enforcing section 30-55(2)(a)." (Doc. 1, p. 8). Similarly, the plaintiffs' motion for summary judgment specifies "[o]nly subsection 30-55(2)(a) is at issue" and "Subsection 30-55(2)(A) . . . is the portion of the ordinance that [the plaintiffs] challenge." (Doc. 15, p. 5).

The substantive due process principle commonly referred to as the "void-for-vagueness" doctrine "addresses at least two connected but discrete due process concerns: first, that regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253, 132 S. Ct. 2307, 2317 (2012). The rationale for this principle is "evident: to sustain such a challenge, the complainant must prove that the enactment is vague not in the sense that it requires a person to conform his conduct to

an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 n. 7, 102 S. Ct. 1186, 1191 (1982) (internal citations omitted).

The court will first consider whether Subsection 30-55(2)(a) provides an ordinary person sufficient information to determine what conduct is prohibited, then consider whether Subsection 30-55(2)(a) provides law enforcement officers sufficient guidance to properly enforce the law.

### 1.   Notice

Though the plaintiffs argue Subsection 30-55(2)(a) "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," much of the plaintiffs' argument on this point more correctly aligns with discussion on the clarity of the Ordinance's enforcement standards. (Doc. 25, p. 6). That being said, the plaintiffs argue the "open-ended list of factors" in 30-55(2)(a) leaves so much room as to render vague what conduct the Ordinance prohibits. (*Id.* at 7).

Though those factors are highly relevant to a law enforcement officer's capacity to properly enforce the Ordinance, the Ordinance is explicit enough for ordinary persons to understand what conduct the Ordinance prohibits. Section 30-55(1) states "[n]otwithstanding any other provision of this chapter . . . it shall be unlawful for any person to make or continue, or cause or permit

to be made or continued, any noise disturbance." The Ordinance's actual prohibited conduct, found under 30-55(1), is therefore (with some limited exemptions) whether a person creates a noise disturbance as defined in Subsection 30-53(11). That noise disturbance is defined in Subsection 30-53(11) as "[a]ny noise or vibration which . . . [d]isturbs, annoys or is harmful or injurious to the health or welfare of a reasonable person of ordinary sensibilities" or exceeds the maximum decibel limits in Section 30-55(2)(b).

Persons can understand what conduct is prohibited because, as explained in the definition at Subsection 30-53(11), "the overarching standard at play in this ordinance is the reasonable personable standard." *DA Mortg., Inc. v. City of Miami Beach*, 486 F.3d 1254, 1272 (11th Cir. 2007). To be sure, reasonableness itself is not the most acutely defined standard.[2] But "[c]ondemned to the use of words, we can never expect mathematical certainty from our language." *Grayned v. City of Rockford*, 408 U.S. 104, 110, 92 S. Ct. 2294, 2299 (1972) "Flexibility and reasonable breadth, rather than meticulous specificity, is acceptable in this area." *Reeves v. McConn*, 631 F.2d 377, 386 (5th Cir. 1980)[3] (internal citations omitted). While other courts in

---

[2] *See* Benjamin C. Zipursky, *Reasonableness In and Out of Negligence Law*, 163 U. Pa. L. Rev. 2131, 2135 (2015) (discussing the varied meanings the "reasonable person" standard inherits across different areas of law).

[3] In *Bonner v. City of Prichard*, the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981. 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

16

other jurisdictions have found differently, "definitions based on the 'reasonable person standard'—a wide-ranging standard used throughout the law—have been upheld in this Circuit" for similar noise ordinances. *Summers v. City of Daytona Beach*, No. 6:12-cv-926, 2013 WL 360376 (M.D. Fla. Jan. 30, 2013).

Thus, the Ordinance gives fair notice to ordinary persons of reasonable intelligence as to what conduct is prohibited.

### 2. Enforcement Standards

Though the undersigned concludes proper notice of the Ordinance's prohibited conduct was provided to the plaintiffs, the Supreme Court has concluded "the more important aspect of vagueness doctrine is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement." *Kolender v. Lawson*, 461 U.S. 352, 358, 103 S. Ct. 1855, 1858 (1983) (internal citations omitted).

The Ordinance's enforcement standards in Subsection 30-55(2)(a) do not pass constitutional muster. *DA Mortgage*, an Eleventh Circuit case relied upon by Holmes Beach, firmly addresses this issue. *DA Mortgage* dealt with Miami Beach County Ordinance § 21-28 as enforced against the owner of a Miami Beach nightclub. *DA Mortg., Inc.*, 486 F.3d at 1270–71. The nightclub owner, L.C., sued the City of Miami Beach. *Id*. L.C. alleged the cited noise

17

ordinance was unconstitutionally vague and violated the plaintiff's rights under the First and Fourteenth Amendment. *Id*. at 1258.

Section 21-28, stated "[i]t shall be unlawful for any person to make, continue, or cause to be made or continued any unreasonably loud, excessive, unnecessary or unusual noise."[4] The ordinance then included a non-exhaustive list of acts declared to be unreasonably loud, including the use of lawnmowers between 8:00 P.M. and 7:00 A.M. and the use of a car horn beyond "as a danger warning." *Id*. L.C. challenged the subsection he was charged under, which prohibited the use of a television set, radio set, or musical instrument "in such manner as to disturb the peace, quiet, and comfort of the neighboring inhabitants, or at any time with louder volume than is necessary for convenient hearing for the person or persons who are in the room." *Id*.

On appeal, the Eleventh Circuit concluded the ordinance was "not so vague that persons of ordinary intelligence would have to guess at its meaning." *DA Mortg., Inc.*, 486 F.3d at 1271. The court compared the language in Section 21-28(b) to language from a noise ordinance upheld in *Grayned*, 408 U.S. at 108–09, 92 S. Ct. at 2298 that prohibited "any noise or diversion which disturbs or tends to disturb the peace or good order of [a]

---

[4] This quotation is pulled from a filing in the underlying litigation to *DA Mortgage*. *DA Mortgage Inc. v. City of Miami Beach*, Case No. 1:03-cv-20684-JEM, Doc. 53, p. 32 (S.D. Fla. March 31, 2004).

school session or class thereof" and found the language "clearly analogous." *Id*. The court further concluded the phrase "with louder volume than necessary for convenient hearing" was a phrase "marked by 'flexibility and reasonable breadth,'" as is often required in noise ordinances. *Id*. (*citing Grayned*, 408 U.S. at 108, 92 S. Ct. at 2298).

Turning to the question of enforcement standards, the court concluded Subsection 21-28(b) did not provide unclear enforcement standards because "the overarching standard at play in [the] ordinance is the reasonable person standard since the statute begins by prohibiting 'unreasonably loud, excessive, unnecessary or unusual noises.'" *Id*. at 1272. The court further concluded Subsection 21-28(b)'s enforcement standards were clear due to the ordinance's inclusion of an "objective standard" for enforcement guidelines. Specifically, that ordinance included the following objective enforcement guidelines: "[o]perating a sound reproduction device between the hours of 11:00 p.m. and 7:00 a.m. in 'such a manner as to be plainly audible at a distance of one hundred (100) feet from the building, structure or vehicle in which it is located' is considered prima facie evidence of a violation." *Id*. The Eleventh Circuit thus concluded Miami Beach Ordinance § 21-28 was not unconstitutionally vague.

As in *DA Mortgage*, another subsection of the Ordinance provides some hard, objective sound measurements that constitute "prima facie evidence of

a noise disturbance." HBC § 30-55(2)(b). Specifically, sounds exceeding 65 decibels between the hours of 7:00 A.M. and 10:00 P.M., sounds exceeding 50 decibels between the hours of 10:00 P.M. and 7:00 A.M., and the use of certain outdoor mechanical equipment in residential areas constitutes "prima facie evidence of a noise disturbance." *Id*. However, under Section 30-55(2), the application of objective noise measurements is unnecessary "so long as evidence exists sufficient to establish that the sound constitutes a noise disturbance pursuant to the applicable standard of proof." *Id*.

Thus, in the absence of scientific noise measurements, Subsection 30-55(2)(a) asks law enforcement officers to consider the "volume," "intensity," and "duration" of the noise. Subsection 30-55(2)(a) suggests law enforcement officers examine "[w]hether the nature of the noise is usual or unusual," as well as "[t]he proximity of the noise to residential sleeping facilities" and "[t]he time of the day or night the noise occurs." And Subsection 30-55(2)(a) makes clear this list of broad background standards is non-exhaustive, and "may include but shall not be limited" to those particular factors.

What defines whether a sound is too "intense"? Could the use of a rumbling, gas-powered chainsaw to remove a decaying oak tree from a resident's property be of such "volume" and last for such "duration" as to produce a sufficiently "unusual" noise, constituting a noise disturbance under the Ordinance?  No objective enforcement guidelines are provided in this

subsection. None of Subsection 30-55(2)(a)'s terms or phrases are defined in the Ordinance and the non-exhaustive nature of the list would render any such definitions moot as to a vagueness inquiry.

Suffice to say, this language gives law enforcement officers virtually no guidance on how to enforce Subsection 30-55(2)(a). In response, Holmes Beach argues the Ordinance "is bounded by principles of reasonableness." (Doc. 25, p. 21). This is true for parties considering whether their conduct may violate the Ordinance. But what an average person can assume about regulated conduct is a separate inquiry from how law enforcement officers go about regulating said conduct.

Subsection 30-55(2)(a)'s background standards introduce a layer of subjectivity law enforcement officers must grapple with when deciding whether a given defendant has created a noise disturbance. That added ambiguity renders Subsection 30-55(2)'s enforcement standards insufficiently clear for officers to follow. *See Konikov*, 413 F.3d at 1330 ("when a statute implicates First Amendment rights, we may consider the *risk* of arbitrary enforcement-the possibility that the statute will chill expression.").

While the average person may be able to rely on the Ordinance's definition of a noise disturbance as disturbing or annoying a reasonable person, Subsection 30-55(2) makes clear that "[t]he occurrence of the conditions, acts, or omissions as described in subsections a. or b. of this

section shall constitute a violation of this chapter" and "stand alone." Law enforcement officers are thus commanded under the strict text of the ordinance to rely upon an ill-defined, open-ended group of parameters to parse whether a particular noise is an unreasonable noise disturbance. Subsection 30-55(2)(a) thus "delegate[s] too much authority to those charged with enforcing it," and is far from the "high level of clarity" demanded by the Constitution to adequately protect "the exercise of a constitutionally protected right." *Konikov*, 410 F.3d at 1329–30.

## IV.   CONCLUSION

Subsection 30-55(2)(a) is void for vagueness and thus violates the Fourteenth Amendment to the U.S. Constitution. Accordingly, the City of Holmes Beach is enjoined from enforcing Subsection 30-55(2)(a). This order does not impact Subsection 30-55(2)(b).

Based on the parties' filings, Chief Tokajer is **DISMISSED with prejudice**. The plaintiffs' motion for summary judgment (Doc. 15) is **GRANTED**. Holmes Beach's motion to dismiss (Doc. 8) and cross-motion for summary judgment (Doc. 25), as well as Justin Clark's motion for a hearing (Doc. 27), are **DENIED** as moot.

The complaint also requests an award for attorney's fees, expert fees, and costs under 42 U.S.C. § 1988 and 28 U.S.C. § 1920. (Doc. 1, p. 8). Because the plaintiffs prevailed in their action under 42 U.S.C. § 1983, the plaintiffs

may be awarded expert fees and "a reasonable attorney's fee." 42 U.S.C. § 1988(b–c). Further, Federal Rule of Civil Procedure 54(d)(1) prescribes an award of costs for a prevailing party unless a federal statute, the Federal Rules of Civil Procedure, or a court order provides otherwise. The plaintiffs correctly note 28 U.S.C. § 1920 affords the plaintiffs certain fees and compensation that may also be taxed as costs. The plaintiffs thus shall file a motion, supported by an affidavit, within fourteen (14) calendar days of the entry of this Order indicating the reasonable attorneys' fees and costs incurred in prosecuting this claim.

The Clerk is directed to enter judgment in favor of the plaintiffs, terminate any pending motions and deadlines, and close the case.

**ORDERED** in Tampa, Florida, on June 7, 2023.

AMANDA ARNOLD SANSONE
United States Magistrate Judge